## Appeal of McLane

*Dan A. Blakinger,* for appellant.
*John L. Sampson, III,* for appellee.

PEREZOUS, *J.,* August 29, 1983 — Robert A. McLane, III [hereinafter appellant] owns a tract of land with a dwelling house thereon in the Borough of Millersville. Desirous to renovate and convert the property into an apartment building, appellant submitted several final land development plans pursuant to the borough's Subdivision and Land Development Ordinance (hereinafter ordinance unless otherwise specified). The last of these plans was submitted on October 12, 1982.

The tract at present has no streets within its confines and would remain the same in that respect after the proposed development. Manor Avenue borders the tract on one side.

The October 12, 1982, plan was rejected on December 6, 1982, because it contained no provision for the installation by appellant of curbs and sidewalks along Manor Avenue and also because it contained no guarantee for the financing of such improvements.

Appellant proffers two bases for reversing the decision disapproving the plan, one substantive and the other procedural. Substantively, appellant con-

tends that there exists no ordinance authority adequate under the law requiring the installation of curbs and sidewalks in the situation presented. Appellant alternatively contends that the borough's decision fails to comport with the requirements of the Pennsylvania Municipalities Planning Code relating to the requisite specificity of such decisions.

Appellant's substantive argument is based upon the well-established principle that requires a legislative enactment restricting the free use of one's property to be strictly construed and not to be interpreted to restrict such free use by implication. Gulf Oil Corporation of Pa. v. Warminister Twp. Bd. of Supervisors, 22 Pa. Commw. 63, 348 A.2d 485 (1975).

In its decision, the borough refers to sections 403(c)(9), 502(a), and 403(d)(12) of the ordinance. Section 403 concerns the submission of a final development plan. Subsection (c)(9) thereunder provides that the final plan shall show "pedestrian ways, including all sidewalks, crosswalks and pedestrian rights of way to be used for general public use." Section 403(d)(12) provides that a final plan shall be accompanied by one of the enumerated forms of guarantees concerning required improvements. Section 502(a) provides that "land be developed in conformance with the comprehensive plan, zoning ordinance, and other ordinances in effect in the borough."

The borough in its brief also relies upon section 503.1(a), which provides in part that the location and width of all streets shall conform to the "official map." The borough then notes that the definition of "street" in the ordinance includes the entire right of way for pedestrian traffic, and, thereby, sidewalks. Finally, to complete its argument, the borough refers to the official map, which shows four foot wide sidewalks in front of appellant's property on Manor Avenue.

To commence analysis, the court notes that under the provisions of the Borough Code, Act of February 1, 1966, P.L. (1965), 1656, 53 P.S. §§46801 through 46806, a borough may in the exercise of its police powers require property owners to construct sidewalks. It is clear, however, that the exercise of such power, in the first instance at least, must be accomplished by enacting an appropriate ordinance. See Canton Boro. v. Williams, 67 Pa. Super. 239, 246 (1917); Sweigart v. Boro. of Ephrata, 21 Pa. Commw. 280, 344 A.2d 766 (1975). As shown by the ordinance enacted by the Borough of Ephrata noted in Sweigart, the ordinance may be stated in the most general terms possible, allowing specific application thereof to the non-discriminatory "policy" of the borough. Ephrata's ordinance provided simply, in paraphrased form, that property owners shall construct sidewalks when notified to do so by borough council.

Turning to the ordinance provisions at issue here, the court concludes that the only provision which even arguably would require appellant to install sidewalks and curbs is §503.1(a). Article 500 of the ordinance is entitled "site standards" and §503 thereunder "streets." Section 503.1(a) requires that the "location and width of all streets [defined in the definitional article to include pedestrian ways] shall conform . . . to the official map or to such parts thereof as adopted by the borough." The official map as adopted by the borough depicts a four foot wide sidewalk along the portion of Manor Avenue bordering appellant's property.

A court's task in interpreting such an enactment is not a simple one, for it is the court's responsibility to interpret the ordinance so as not to restrict appellant's use of the land by implication while at the same time to attempt to give meaning to every provision in the ordinance.

The borough urges the court in essence to interpret the amorphous language of §503.1(a) to require a landowner "developing" land which abuts an *existing* street to install curbs and sidewalks along that street if the official map contains a drawing to that effect.

While it is beyond doubt that §503.1(a) merely "implies" that conclusion, §503.1(a) is ineffectual unless it does mean what the borough says it means. This is so because the term "streets" as used therein clearly means existing streets since §503.1(b) speaks in terms of further requirements for "proposed streets." Accordingly, since the ordinance in general is a body of requirements directed to landowners, §503.1(a) must, if anything, require landowners developing or subdividing land to do something with respect to existing streets abutting the land.

We conclude, therefore, that there does not exist authority in the ordinance in support of the borough's position.

Appellant's alternate theory in support of reversal is based upon §508(2) and 508(3) of the Pennsylvania Municipalities Planning Code, 53 P.S. §§10508(2), 508(3). Section 508(2) provides that "when the application is not approved in terms as filed, the decision shall specify the defects found in the application and describe the provisions of the statute for ordinance relied upon." Section 508(3) provides that the failure of the governing body to render a decision in the proper form shall be deemed an approval of the application.

Here, the borough's decision referred appellant to the ordinance provisions requiring an application to set forth pedestrian ways and include a guarantee for the financing thereof. The borough did not, however, include in its decision a reference to

§503.1(a), which in view of the preceding analysis is the only provision which would require appellant to construct sidewalks in the first place.

To date, the Commomwealth Court has in two instances applied §508(3) to the *form* of a borough's decision and deemed that decision, because of deficiencies therein to be approvals of the applications. V.C. Finisdore, Inc. v. Twp. of Lower Merion, 27 Pa. Commw. 598, 367 A.2d 412 (1976); Newberry Twp. Bd. of Supervisors v. Newberry Estates, Inc., 58 Pa. Commw. 134, 427 A.2d 327 (1981). Unlike the case at bar, the decisions at issue in the cited cases can be characterized as clear violations of the statutory provisions in question, since in V.C. Finisdore no citations at all were provided and in Newberry neither a clear statement of the violations nor citations were provided.

We conclude that the form of decision in the case at bar is distinguishable from those in the cited cases in that it adequately informs appellant of the borough's position. We do not believe that the statutory provisions in question would require a borough in rendering a decision of this nature to provide an intellectually perfect and "foolproof" reasoning, in the legal sense, at the risk of making its decision ineffectual by means of a "deemed approval."

In view of the forgeoing, the form of the borough's decision is held to comport with the statutory requirements in question, and we enter the following

## ORDER

. And now, this August 29, 1983, for the reasons set forth in the attached opinion, the decision of the Millersville Borough Council disapproving the final land development plan submitted to it on October 12, 1982, by Robert A. McLane, III is hereby affirmed.